

U.S. Department of Justice

United States Attorney
Eastern District of New York

FTB:PP
F. #201900719

271 Cadman Plaza East
Brooklyn, New York 11201

November 23, 2022

By Hand and ECF

The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Akiva Schonfeld
                Criminal Docket No. 19-489 (PKC)

Dear Judge Chen:

      The government respectfully submits this sentencing letter in anticipation of the defendant's sentencing on November 28, 2022. On October 28, 2021, the defendant pleaded guilty to conspiracy to distribute and possess with an intent to distribute narcotics and conspiracy to commit money laundering. For the reasons set forth below, the government respectfully requests that the Court impose a significant sentence of imprisonment below the applicable Guidelines range.

    I.    Background

      As set forth in the Indictment and the PSR, the defendant conspired with a North Carolina Drug Trafficking Organization ("NC DTO") and was involved in multiple related money pick-ups. See Presentence Report ("PSR") ¶¶ 8-9.

      Since approximately 2017, the DEA and other law enforcement agencies have been investigating the NC DTO. See PSR ¶ 8. The NC DTO had access to substantial quantities of narcotics which were routinely distributed throughout the United States. Further, the NC DTO made significant attempts to purchase firearms within the United States and transport them to Mexico. Finally, the evidence shows that the NC DTO routinely laundered money through various individuals and organizations in Brooklyn. See PSR ¶ 8.

      The defendant conspired with the NC DTO by acting as a money courier. See PSR ¶ 9. On November 8, 2017, law enforcement agents stopped and arrested the defendant after observing him arrive for a money pick-up. See PSR ¶ 9. Law enforcement officers approached the defendant and received consent from him to search his vehicle, whereupon officers discovered approximately $180,000 in the trunk of the car. See PSR ¶ 9. The

1

money was secured with rubber bands, in bundle form, in a manner consistent with narcotics proceeds. Law enforcement officers seized the money and arrested the defendant. While in custody, the defendant stated that he had been laundering money for approximately two years and had laundered more than $1 million. The defendant was released before any charges were filed against him. See PSR ¶ 9.

On February 15, 2018, the defendant participated in another money pick-up. At the same time they observed this meeting, law enforcement intercepted a telephone call with the defendant and a co-conspirator about the money laundering. See PSR ¶ 10.

On February 25, 2018, after intercepting similar conversations between the defendant and this same co-conspirator and observing a similar meeting at which the defendant picked up money from the individual, law enforcement officers performed a traffic stop of the defendant. DEA agents searched the defendant's vehicle and found approximately $323,000 in cash, secured similarly with rubber bands in bundle form. See PSR ¶ 11. During this traffic stop, the defendant admitted that: (1) he was aware the money was proceeds from illicit activities; (2) he had no proprietary interest in the money; (3) he had previously been arrested for this conduct; (4) this was his third trip to North Carolina in order to pick up money; (5) he made numerous other trips to locations such as Georgia, Illinois, and Massachusetts to transport money; (6) he usually picked-up between $100,000 and $200,000; and (7) he placed the money in numerous bank accounts belonging to unknown individuals. See PSR ¶ 12.

On February 26, DEA agents again interviewed the defendant. See PSR ¶ 13. The defendant stated that he traveled to conduct money pick-ups one or two times per month and that, during this time, he had picked up and transported over $2,000,000 across at least eight states. See PSR ¶ 13. The defendant also described several occasions on which he delivered money he had picked up to individuals in Brooklyn and Queens. See PSR ¶ 13.

On June 26, 2019, the defendant was arrested on a complaint charging him with money laundering conspiracy. On November 8, 2019, a grand jury in this district returned a nine-count Superseding Indictment against the defendant and several co-conspirators. The Superseding Indictment charged the defendant with various drug trafficking and money laundering offenses.

On October 28, 2021, the defendant pled guilty to a lesser-included offense of Count 3, charging him with cocaine-and-heroin-distribution conspiracy, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C), and Count 9, charging him with money-laundering conspiracy, in violation of 18 U.S.C. § 1956(h).

II.     Sentencing Guidelines

The parties agree that the following Guidelines calculation should apply:

Count Three (Cocaine and Heroin Conspiracy):

Base Offense Level (§§ 2D1.1(a)(5), 2D1.1(c)(5))                                        30

|   |   |   |
|---|---|---|
| Less: | Minimal participant (§ 3B1.2(a)) | -4 |
| | Total: | **26** |

Count Nine (Money Laundering Conspiracy):

|   |   |   |
|---|---|---|
| | Base Offense Level (§ 2S1.1(a)(1)) | 26 |
| Plus: | Convicted Under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)) | +2 |
| Less: | Minor participant (§ 3B1.2(b)) | -2 |
| | Total: | **26** |

Multiple Count Adjustment

|   |   |   |
|---|---|---|
| | Combined Adjusted Offense Level (§ 3D1.4) | 26 |
| Minus: | Acceptance of Responsibility (§ 3E1.1) | -3 |
| | Total: | **23** |

The Total Combined Adjusted Offense Level is 23, which, based on a criminal history category of I, carries a Guidelines range of 46 to 57 months' imprisonment.

The Probation Department calculated the defendant's money laundering Guidelines by using a base offense level of 30 (the offense level for the narcotics count before a minimal participant adjustment), stating that the government's calculation in the plea agreement "essentially awards a double mitigating role." But, as the defendant correctly notes, calculating the Guidelines under § 2S1.1(a)(1) requires using "the total Guidelines offense level for such 'underlying offense,' after being independently calculated by applying all appropriate adjustments." United States v. Menendez, 600 F.3d 263, 267 (2d Cir. 2010); see also United States v. Cruzado-Laureano, 440 F.3d 44, 48 (1st Cir. 2006) ("Section 2S1.1 of the Sentencing Guidelines . . . directs the sentencing court to take as the base offense level for purposes of § 2S1.1 the full calculated offense level that applies to the offense which produced the laundered funds. . . . Here, this instruction meant that, before considering what money-laundering-related adjustments to apply to [the defendant's] sentence, the court first had to calculate the sentence as it would have applied to the extortion counts standing alone . . . ."). Thus, the government submits that the Total Offense Level should be a 23 and not a 25.

III. A Below Guidelines Sentence is Appropriate

The government respectfully submits that a below-Guidelines sentence, but one that carries a significant term of imprisonment, is sufficient but not greater than necessary under the circumstances of this case. As an initial matter, the nature and circumstances of the instant offense – the laundering of narcotics proceeds – is inherently

3

serious and supports a significant sentence.  See 18 U.S.C. § 3553(a)(1).  Although the defendant did not recruit, oversee, or orchestrate the conspiracy, he nonetheless conspired with the NC DTO by laundering, based just on his own admission, more than $2 million of narcotics proceeds knowing that he was laundering dirty drug money.  Even though the defendant did not touch the drugs, money launderers play a critical role in drug trafficking organizations because, without the ability to launder these proceeds back to Mexico, drug trafficking organizations would not import narcotics into the United States.

       Second, although the defendant now expresses significant remorse for his actions, the defendant repeatedly engaged in this conduct.  Most notably, even after he was first arrested by law enforcement and admitted to money laundering, the defendant again continued his illicit activities on behalf of the NC DTO.  The defendant continued to travel to different states to transport hundreds of thousands of dollars of cash.  This demonstrates that a period of incarceration is necessary not only to punish the defendant but also to provide both specific and general deterrence.

       However, in recommending a below Guidelines sentence, the government acknowledges that the defendant reports ███████████████████████████████████ ███, as well as that the defendant appears to have made significant strides in obtaining gainful employment since his arrest.  Further, the defendant acted as a mere courier for the NC DTO; he did not direct or plan the money laundering activities.

IV.    Conclusion

       For the foregoing reasons, the government respectfully requests that the Court impose a significant sentence of incarceration below the applicable Guidelines range.

       In addition, the government respectfully requests that the Court permit the government to file this sentencing memorandum under seal and to post a redacted version on the public docket given the nature of the defendant's personal circumstances discussed in the under seal filing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/
Philip Pilmar
Assistant U.S. Attorney
(718) 254-6106

cc:    Clerk of the Court (PKC) (By ECF)
       Ilana Haramati, Esq. (By ECF and E-mail)
       U.S. Probation Officer Roberta Houlton (By E-mail)